## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JEANNETTE BAECHLE, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| CREDIT ASSOCIATES, LLC, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Jeannette Baechle ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendant Credit Associates, LLC ("Defendant") and, based upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and upon information and belief, supported by the investigation of Plaintiff's counsel, as to all other matters, Plaintiff alleges as follows:

### NATURE OF THE ACTION

1.      This putative class action arises out of Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., and its implementing regulations adopted by the Federal Communications Commission ("FCC"), and Defendant's violations of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA").

2.      Through its enactment of the TCPA, Congress "targeted unwanted text messages (as well as unwanted phone messages)." *Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023).

3.      As alleged herein, Defendant violated several provisions of both the TCPA and the FTSA by (1) placing automated calls to Plaintiff and the proposed Class ("Class," defined below) without having prior express written consent; (2) placing telemarketing calls to telephone numbers

registered on the National Do Not Call ("DNC") Registry without prior express written consent; (3) initiating telemarketing calls without instituting "procedures for maintaining a list of persons who request not to receive such calls" that met the FCC's "minimum standards"; (4) failing to honor opt-out requests from Plaintiff and the Class members to not receive further calls by or Defendant's behalf; and (5) failing to honor Florida's Caller Identification ("ID") Rules.

4.      Through this action, Plaintiff seeks injunctive relief to end Defendant's ongoing and future violations of the TCPA and the FTSA. Plaintiff also seeks an award of statutory damages and/or liquidated damages to Plaintiff and the Class.

## JURISDICTION AND VENUE

5.      **Subject Matter Jurisdiction.** This Court has federal question subject matter jurisdiction over Plaintiff's federal TCPA claims pursuant to 28 U.S.C. § 1331. This Court has supplemental subject matter jurisdiction over Plaintiff's FTSA claims pursuant to 28 U.S.C § 1367 as those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

6.      **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because this suit arises out of and relates to Defendant's contacts with Florida as Defendant initiated and directed the unlawful telemarketing calls at issue to Plaintiff who received such calls while located in Florida.

7.      **Venue.** Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

8.      Plaintiff is a natural person and, at all relevant times, was a resident of St. Lucie County, Florida.

9.      Defendant is a Texas Corporation with its principal place of business in Dallas County, Texas.

## FACTUAL ALLEGATIONS

10.     At all relevant times, Plaintiff was the subscriber and primary user of a cellular telephone number ending in 2232.

11.     The 2232 number is Plaintiff's residential line.

12.     Plaintiff registered the 2232 number on the DNC, and it has been registered since August 17, 2016.

13.     To promote the sale of its goods and services, Defendant engages in aggressive and intrusive telemarketing to consumers using automated technology without prior express written consent.

14.     Defendant also initiates telephone solicitations to residential telephone numbers registered on the National DNC Registry, without prior express written consent.

15.     Defendant also initiates telemarketing calls without complying with the FCC's requirement that it institute "minimum standards" for "procedures for maintaining a list of persons who request not to receive such calls."

16.     As a result of Defendant's failure to meet even the "minimum standards" as to the required "procedures for maintaining a list of persons who request not to receive such calls," Defendant continues to harass consumers with unsolicited telephone calls even after they communicated to Defendant that they do not wish to receive further calls.

17.     Beginning around January 12, 2024, Defendant—or third-parties acting on Defendant's behalf—began sending unsolicited telemarketing text messages to Plaintiff using automated technology.

3

18.    Plaintiff never provided Defendant with prior express written consent, or any consent or permission, to receive the telemarketing text messages at issue.

19.    Below, without limitation, are examples of some of the telemarketing text messages that Defendant transmitted to Plaintiff's cellular phone.

 

20.     FTSA's Caller ID Rules require that persons making Telephonic Sales Calls[1] transmit – to the consumer's caller identification service – a seller's customer service telephone number, that is capable of receiving telephone calls during regular business hours. And, unlike claims arising from text message solicitations the called party does not consent to receive, claims for violations of the Caller ID Rules are equally applicable to all Telephonic Sales Calls regardless of whether they are solicited or consented to.

21.     Defendant transmitted the telemarketing messages using a short code, 62500, to Plaintiff's cellular number caller identification service. Through the investigation of counsel, calls to 62500 could not be completed as dialed.

22.     With each Defendant's telemarketing text messages, Defendant transmitted a telephone number to the Caller ID Service of Plaintiff and the Plaintiff Class that was not capable of receiving telephone calls and failed to connect the recipients, including Plaintiff, to the Defendant, as explicitly required by the FTSA's Caller ID Rules.

23.     In an attempt to opt-out of any further telemarketing text communications with Defendant, Plaintiff texted back the word "STOP." Defendant ignored Plaintiff's request and continued sending numerous telemarketing text messages to Plaintiff, despite Plaintiff's clear revocation of any alleged prior consent.

24.     Defendant's failure to "honor [Plaintiff's] do-not-call request within a reasonable time" means that Defendant failed to meet one of the TCPA's "minimum standards" telemarketers

---

[1] "Telephonic Sales Call" is defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

are obligated to meet in order to place "any call for telemarketing purposes to a residential telephone subscriber." *See* 47 U.S.C. § 64.1200(d) & (d)(3).

25.     Defendant's failure to honor Plaintiff's repeated do-not-call requests also strongly suggests that Defendant does not meet the other "minimum standards" of Section § 64.1200(d). Specifically, that Defendant (1) does not have a written policy for maintaining an internal do not call list, as required by 47 U.S.C. § 64.1200(d)(1); (2) does not inform and train its personnel engaged in telemarking on the existence and use of any internal do-not-call list, as required by Section 64.1200(d)(2); (3) does not "record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made," as required by Section 64.1200(d)(3); and (4) does not maintain a record of a consumer's request not to receive further calls, as required by Section 64.1200(d)(6).

26.     Moreover, the facts here strongly suggest that Defendant used an automatic telephone dialing system to place the telephone calls at issue to Plaintiff and the Classes because (1) Plaintiff never provided Defendant with her telephone phone number; (2) Plaintiff has no established business relationship with Defendant; (3) the content of Defendant's  text messages were generic and ostensibly designed for *en masse* transmission; and (4) short code 62500 was not capable of receiving Plaintiff's incoming messages or removing Plaintiff from Defendant's telemarking list.

27.     Defendant's unlawful telemarketing texts caused Plaintiff and the Class members concrete injury and actual damages, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, violation of their statutory privacy rights, and disruption to their personal and daily life as Plaintiff received Defendants' unsolicited telemarketing messages at inconvenient times, causing Plaintiff to stop to check her phone and

waste time reviewing the text messages to confirm they were not for an emergency purpose, and because Plaintiff was forced to spend time investigating Defendant and seeking legal counsel to stop Defendant's harassing actions.

## CLASS ALLEGATIONS

28.     Plaintiff brings this action individually and as a class action under Fed. R. Civ. P. 23 on behalf of the following proposed Classes:

**TCPA Autodialer Class:** All persons within the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) received a telephone call, (2) by or on behalf of Defendant, (3) on their cellular phone, (4) that was sent using the same equipment or type of equipment used to call Plaintiff, (5) and who did not give prior express written consent to receive such calls.

**TCPA DNC Registry Class:** All persons in the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) received two or more telephone calls in any 12-month period (2) by or on behalf of Defendant, (3) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, (4) after their telephone number had been listed on the National Do Not Call Registry for at least thirty days.

**TCPA Internal DNC Class:** All persons in the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) made a request to not receive telephone calls from or on behalf of Defendant, and (2) received two or more telephone calls in any 12-month period (3) by or on behalf of Defendant (4) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

**FTSA Autodialer Class:** All persons in the State of Florida who, between July 1, 2021, and the date of class certification, (1) received a telephone phone call (2) by or on behalf of Defendant (3) regarding Defendant's property, goods, and/or services (4) that was sent using the same equipment or type of equipment utilized to call Plaintiff, (5) and who did not give prior express written consent to receive such calls.

**FTSA DNC Class:** All persons in the State of Florida who, between July 1, 2021, and the date of class certification, (1) received a telephone call, (2) by or on behalf of Defendant (3) regarding Defendant's property, goods, and/or services (4) after their telephone number had been listed on the National Do Not Call Registry for at least thirty days.

7

**FTSA Internal DNC Class:** All persons in the State of Florida who, between July 1, 2021, and the date of class certification, (1) received a telephone call, (2) by or on behalf of Defendant, (3) regarding Defendant's property, goods, and/or services, (4) after they communicated that they do not wish to receive an outbound telephone call made by or on behalf of Defendant.

**FTSA ID Class:** All persons in the State of Florida who, between July 1, 2021, and the date of class certification, (1) received a telephone call, (2) by or on behalf of Defendant, (3) that was not capable of receiving telephone calls and/or failed to connect callers to the Defendant's customer service telephone number during regular business hours.

29.     The Classes defined above are, at times, referred to herein individual or collectively as the "Class."

30.     Plaintiff reserves the right to expand or narrow the definitions of the Classes following discovery.

31.     Excluded from the Class is Defendant and its employees and agents.

32.     ***Numerosity.*** The members of the Class are so numerous that individual joinder is impracticable. Plaintiff cannot know the exact number of Class members affected by Defendant's conduct, but based on the general nature of telemarketing campaigns, Plaintiff believes, and therefore alleges upon information and belief, that each Class includes, at a minimum, at least 40 members. The members of the Class are ascertainable because they are defined by reference to objective criteria. The exact number and identities of the Class members are unknown at this time but can be ascertained through discovery as Defendant maintains internal records that can be used to identify each member of the Class, such that identification of the Class members is a matter capable of ministerial determination from Defendant's records.

33.     ***Common questions of law and fact predominate.*** There are numerous questions of law and fact that are common to the Class that predominate over any questions affecting only

individual members of the Class, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

a.   Whether Defendant placed telephone calls to the cellular phones of Plaintiff and the Class using an automatic telephone dialing system within the meaning of the TCPA;

b.   Whether Defendant placed telephone calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA;

c.   Whether Defendant placed telephone calls to telephone numbers registered on the National DNC Registry;

d.   Whether Defendant initiated telemarketing calls without instituting the "minimum standards" for procedures for maintaining a list of persons who request not to receive such calls;

e.   Whether Defendant called Plaintiff and the Class members after they communicated that they do not wish to receive an outbound telephone call made by or on behalf of Defendant;

f.   Whether Defendant's telephone calls introduced an advertisement;

g.   Whether Defendant's telephone calls constitute "telephone solicitations" under the TCPA;

h.   Whether Defendant's telephone calls constitute "telemarketing" under the TCPA;

i.   Whether Defendant's telephone calls constitute "telephonic sales calls" under the FTSA;

j.   Whether Defendant can meet its burden of showing that it had prior express written consent to place telephone calls to Plaintiff and the Class using automated means;

k.   Whether Defendant can meet its burden of showing that it had prior express written consent to place telephone calls to telephone numbers listed on the National DNC Registry;

l.   Whether Defendant transmitted the calls at issue displaying a caller ID number that was not capable of receiving telephone calls and/or failed to connect callers to the Defendant's customer service telephone number during regular business hours.

m.   Whether Defendant acted knowingly or willfully in placing the unlawful calls at issue;

n.   Whether Defendant is liable to Plaintiff and the Class for statutory damages and/or liquidated damages, and the amount of such damages; and

o.   Whether Defendant should be enjoined from engaging in such conduct in the future.

34.   ***Typicality.*** Plaintiff's claims are typical of the claims of each member of the Class because they are based on the same factual and legal theories, Plaintiff and the Class members were harmed by Defendant in the same way, and Plaintiff is not subject to any unique defenses.

35.   ***Adequacy of Representation.*** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and TCPA litigation specifically, and Plaintiff intends to vigorously prosecute this action. Plaintiff also has no interests that are antagonistic to those of the members of the Class.

36.     ***Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by members of the Class amount to millions of dollars, the amount of individual damages available to each member of the Class as a result of Defendant's violations of law alleged herein does not warrant the expense of individual lawsuits. The likelihood of individual members of the Class prosecuting their own separate claims is remote and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

37.     Further, the prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.

### CAUSES OF ACTION

### COUNT 1

**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)**
**(On Behalf of Plaintiff and the TCPA Autodialer Class)**

38.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

39.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

40.     It is also a violation of the TCPA's implementing regulations adopted by the FCC to "initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service." 47 C.F.R. § 64.1200(a)(1)(iii).

41.     Additionally, it is a violation of the TCPA's implementing regulations to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system…other than a call made with the prior express written consent of the called party[.]" 47 C.F.R. § 64.1200(a)(2).

42.     As alleged herein, Defendant—or third-parties acting on Defendant's behalf— placed telephone calls to the cellular telephone numbers of Plaintiff and the Class using an automatic telephone dialing system.

43.     The following facts strongly suggest that Defendant used an automatic telephone dialing system to make the telephone calls at issue to Plaintiff and the Class: (1) Plaintiff never provided Defendant with her telephone phone number; (2) Plaintiff has no established business relationship with Defendant; (3) the content of Defendant's  text messages were generic and ostensibly designed for *en masse* transmission; and (4) short code 62500 was not capable of receiving Plaintiff's incoming messages and removing Plaintiff from Defendant's telemarking list.

44.     Defendant did not have prior express written consent to place telephone calls to Plaintiff and the Class using an automatic telephone dialing system.

45.     Defendant, therefore, violated Section 227(b)(1)(A)(iii) and the TCPA's implementing regulations in Sections 64.1200(a)(1)(iii) and (a)(2).

46.     As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

47.     Plaintiff and the Class members are entitled to an injunction against Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(b)(3)(A).

48.     Plaintiff and the Class members are also entitled to an award of statutory damages of $500.00 for each telephone call that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(b)(3)(B).

49.     Because Defendant knew or should have known that it was using an automatic telephone dialing system to place calls without prior express written consent, Defendant's violations of the TCPA were willful or knowing.

50.     Under the TCPA, Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each telephone call that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(b)(3)(C).

## COUNT 2

### Violation of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the DNC Registry Class)

51.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Count, as though fully set forth herein.

52.     The TCPA established a National DNC Registry of phone numbers of consumers who object to receiving telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014. 61.

53.     The TCPA's implementing regulations adopted by the FCC provide that "[n]o person or entity shall initiate any telephone solicitation to[] [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c)(2).

13

54.     A violation of Section 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which grants a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(c)]." 47 U.S.C. § 227(c)(5).

55.     Defendant violated Section 64.1200(c) by initiating, or causing to be initiated on its behalf, more than one telephone solicitation in a 12-month period to the residential telephone lines of Plaintiff and the Class members while their telephone numbers were registered on the National DNC Registry.

56.     Defendant's telephone calls to Plaintiff and the Class members constitute "telephone solicitations" under the TCPA because they were initiated "for the purpose of encouraging the purchase or rental of…property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

57.     Defendant did not have prior express written consent to initiate telephone solicitations to Plaintiff and the Class while their numbers were registered on the National DNC Registry.

58.     Defendant did not have prior express invitation or permission to initiate telephone solicitations to Plaintiff and the Class while their numbers were registered on the National DNC Registry.

59.     Defendant did not have an established business relationship with Plaintiff or the Class.

60.     As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

61.     Plaintiff and the Class members are entitled to an injunction against Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(c)(5)(A).

62.     Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each telephone call that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(c)(5)(B).

63.     Because Defendant knew or should have known that it was initiating telephone solicitations to numbers on the National DNC Registry without the requisite level of consent, Defendant's violations of the TCPA were willful or knowing.

64.     Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each telephone call that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(c)(5)(C).

## COUNT 3

**Violation of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the TCPA Internal DNC Class)**

65.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

66.     The TCPA's implementing regulations adopted by the FCC prohibit telemarketers from initiating any call for telemarketing purposes unless they institute certain procedures to ensure do-not-call requests are honored:

> No person or entity shall ***initiate…any call for telemarketing purposes*** to a residential telephone subscriber ***unless*** such person or entity has ***instituted procedures for maintaining a list of persons who request not to receive such calls*** made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d) (emphasis added).

67.     Section 64.1200(d) requires that "[t]he procedures instituted ***must meet*** the following ***minimum standards***:"

15

(1)     ***Written policy***. Persons or entities making…calls for telemarketing purposes **must have a written policy**, **available upon demand**, for maintaining a do-not-call list.

(2)     ***Training of personnel***. Personnel…engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3)     ***Recording, disclosure of do-not-call requests***. If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity **must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list** at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) **must honor a residential subscriber's do-not-call request within a reasonable time** from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

\*                    \*                    \*

**(6)** ***Maintenance of do-not-call lists.*** A person or entity making…any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(1)-(6) (emphasis added).

68.     A violation of Section 64.1200(d) is actionable through 47 U.S.C. § 227(c)(5), which grants a private right of action to any "person who has received more than one telephone

call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(d)]." 47 U.S.C. § 227(c)(5).

69.     Defendant violated Section 64.1200(d) by initiating, or causing to be initiated on its behalf, more than one telephone solicitation in a 12-month period to Plaintiff and the Class members without instituting the "minimum standards" for "procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."

70.     Specifically, Defendant placed two or more calls to Plaintiff and the Class on their residential line for telemarketing purposes.

71.     Defendant's calls to Plaintiff and the Class constitute "telemarketing" under the TCPA because they were initiated "for the purpose of encouraging the purchase or rental of…property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(13).

72.     When Plaintiff and the Class received telemarketing calls by Defendant or on its behalf, they made repeated "do-not-call" requests.

73.     Defendant failed to "honor [Plaintiff's and the Class members'] do-not-call request within a reasonable time" and continued to place telemarketing calls to Plaintiff and the Class.

74.     Given the capabilities of modern telemarketing tools and technology, Defendant has the capability of immediately complying with do-not-call request. Thus, by failing to immediately record and honor Plaintiff's do-not-call request and continuing to initiate multiple telemarketing calls to Plaintiff even four days after her request, Defendant failed to honor her do-not-call request "within a reasonable time." *See Lourie v. Papa John's Int'l, Inc*., No. 1:23-CV-4320-MHC, 2024 U.S. Dist. LEXIS 119679, at *9-10 (N.D. Ga. June 25, 2024) ("Because the Court must accept as true [plaintiff's] allegation that 'Defendant has the capability of immediately complying with Plaintiff's [do-not-call] request,' at this stage of the dispute, the Court must infer

that Defendant could have immediately complied with the request prior to the transmittal of the two telemarketing text messages in the week following Lourie's request.") (internal citations omitted).

75.     By failing to "honor a residential subscriber's do-not-call request within a reasonable time," Defendant failed to meet the required "minimum standard" of Section 64.1200(d)(3).

76.     Defendant's failure to honor Plaintiff's repeated do-not-call requests also strongly suggests that Defendant does not meet the other "minimum standards" of the required "procedures for maintaining a list of persons who request not to receive" telemarketing. Specifically, it suggests that Defendant (1) does not have a written policy for maintaining an internal do not call list, as required by 47 U.S.C. § 64.1200(d)(1); (2) does not inform and train its personnel engaged in telemarking on the existence and use of any internal do-not-call list, as required by Section 64.1200(d)(2); (3) does not "record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made," as required by Section 64.1200(d)(3); and (4) does not maintain a record of a consumer's request not to receive further calls, as required by Section 64.1200(d)(6).

77.     Because Defendant does not meet the "minimum standards" of Section 64.1200(d), Defendant violated Section 64.1200(d) every time it "initiate[d] *any call* for telemarketing purposes," regardless of whether the recipient made a do-not-call request. 47 C.F.R. § 64.1200(d) (emphasis added).

78.     As a result of Defendant's violations of the TCPA, Plaintiff and the other members of the TCPA Class were harmed.

79.     Plaintiff and the Class members are entitled to an injunction against Defendant's ongoing and future violations of the TCPA. *See* 47 U.S.C. § 227(c)(5)(A).

80.     Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each telephone call that Defendant placed in violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(B).

81.     Because Defendant knew or should have known that it was initiating calls for telemarketing purposes without instituting the "minimum standards" for the "procedures for maintaining a list of persons who request not to receive such calls" required by Section 64.1200(d), Defendant's violations of the TCPA were willful or knowing.

82.     Thus, Plaintiff and the Class members are entitled to an award of treble statutory damages of $1,500.00 for each telephone call that Defendant placed in knowing or willful violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(C).

## COUNT 4

### Violation of the FTSA, Fla. Stat. § 501.059(8)(a)
### (On Behalf of Plaintiff and the FTSA Autodialer Class)

83.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

84.     The FTSA prohibits a person from "mak[ing] or knowingly allow[ing] to be made an unsolicited telephonic sales call if such call involves an automated system for the selection or dialing of telephone numbers…without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

85.     Defendant made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection or dialing of telephone numbers.

86.     Defendant's calls to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(8)(a)(1)(j).

87.     The following facts strongly suggest that Defendant used an automatic telephone dialing system to make the telephone calls at issue to Plaintiff and the Class: (1) Plaintiff never provided Defendant with her telephone phone number; (2) Plaintiff has no established business relationship with Defendant; (3) the content of Defendant's  text messages were generic and ostensibly designed for *en masse* transmission; and (4) short code 62500 was not capable of receiving Plaintiff's incoming messages and removing Plaintiff from Defendant's telemarking list.

88.     Defendant placed the telephone calls to Plaintiff and the Class who received such calls while located in Florida.

89.     Defendant did not obtain "prior express written consent" to place unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers, as required by Section 501.059(8)(a).

90.     Thus, Defendant's telephone calls to Plaintiff and the Class violated the Section 501.059(8)(a) of the FTSA.

91.     Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

92.     Plaintiff and the members of the Class are entitled to an injunction against Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

93.     Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephone call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

94.     Because Defendant knew or should have known that it was using an automated system for the selection and dialing of telephone numbers to place telephone calls to Plaintiff and the Class without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

95.     Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each telephone call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

96.     Under Fla. Stat. § 501.059(11)(a), Plaintiff is entitled to recover reasonable attorney fees and costs from the Defendant.

**COUNT 5**

**Violation of the FTSA, Fla. Stat. § 501.059(4)**
**(On Behalf of Plaintiff and the FTSA DNC Registry Class)**

97.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

98.     It is a violation of the FTSA for a "telephone solicitor" to "make or cause to be made any unsolicited telephonic sales call to any residential…telephone number if the number for that telephone appears" on the National DNC Registry. Fla. Stat. § 501.059(4).

99.     Defendant is, and at all times relevant was, a "telephone solicitor" as defined by Section 501.059(1)(i), because Defendant is an "organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]"

100.    Defendant—or third-parties acting on Defendant's behalf—caused or caused to be made unsolicited telephone calls to the Plaintiff and the Class on their residential telephone number.

21

101.    The telephone numbers of Plaintiff and the Class to which Defendant placed unsolicited telephonic calls were registered on the National DNC Registry.

102.    Defendant's unsolicited telephone calls to the Plaintiff and the Class constitute "telephonic sales calls" as defined by Section 501.059(1)(j) because Defendant initiated those calls to promote its "consumer goods or services."

103.    Defendant placed the telephone calls to Plaintiff and the Class from Florida who received such calls while located in Florida.

104.    Defendant placed such unsolicited telephonic sales calls to Plaintiff and the Class members without their prior express written consent.

105.    Thus, Defendant violated Section 501.059(4) of the FTSA.

106.    Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

107.    Plaintiff and the members of the Class are entitled to an injunction against Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

108.    Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephone call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

109.    Because Defendant knew or should have known that it was placing telephonic sales calls to telephone numbers registered on the National DNC Registry without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

110.    Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each call that Defendant placed in willful or knowing violation of the FTSA. Fla. Stat. § 501.059(10)(b).

22

111.     Under Fla. Stat. § 501.059(11)(a), Plaintiff is entitled to recover reasonable attorney fees and costs from the Defendant.

## COUNT 6

### Violations of the FTSA, Fla. Stat. § 501.059(5)
### (On Behalf of Plaintiff and the FTSA Internal DNC Class)

112.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

113.     It is a violation of the FTSA for a "telephone solicitor or other person" to "initiate an outbound telephone call…or voicemail transmission to a consumer…who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call…or voicemail transmission…made by or on behalf of the seller whose goods or services are being offered[.]" Fla. Stat. § 501.059(5).

114.     Defendant is, and at all times relevant was, a "telephone solicitor" as defined by Fla. Stat. § 501.059(1)(i).

115.     In addition, and/or in the alternative, Defendant is, and at all times relevant was, an "other person."

116.     Defendant—or third-parties acting on Defendant's behalf—initiated outbound telephone calls to Plaintiff and the Class.

117.     Defendant initiated outbound telephone calls to Plaintiff and the Class who received such calls while located in Florida.

118.     Plaintiff and the Class members communicated to Defendant that they do not wish to receive an outbound telephone call or voicemail transmission made by or on behalf of Defendant.

119.     Defendant continued to initiate outbound telephone calls to Plaintiff and the Class after their request to not receive an outbound telephone call or voicemail transmission made by or on behalf of Defendant.

120.     Thus, Defendant violated Section 501.059(5) of the FTSA.

121.     Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

122.     Plaintiff and the members of the Class are entitled to an injunction against Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

123.     Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephone call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

124.     Because Defendant knew or should have known that it was initiating outbound telephone calls to consumers who has previously communicated that they do not wish to receive an outbound telephone call made by or on behalf of Defendant, Defendant's violations of the FTSA were willful or knowing.

125.     Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each call that Defendant placed in willful or knowing violation of the FTSA. Fla. Stat. § 501.059(10)(b).

126.     Under Fla. Stat. § 501.059(11)(a), Plaintiff is entitled to recover reasonable attorney fees and costs from the Defendant.

**COUNT 7**

**Violations of the FTSA, Fla. Stat. § 501.059(8)**
**(On behalf of Plaintiff and the FTSA ID Class)**

127.     Plaintiff realleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

128.     Defendant violated the FTSA's Caller ID Rules (Fla. Stat. § 501.059(8)(b)) by placing telemarketing sales calls to Plaintiff and the Class and, in doing so, transmitted to Plaintiff and the Class's caller identification service a telephone number that was not capable of receiving telephone calls and/or that failed to connect callers to the Defendant's customer service telephone number during regular business hours.

129.     Plaintiff and the members of the Plaintiff Class are entitled to a declaration that Defendant's actions, as set out above, violate the FTSA's Caller ID Rules.

130.     Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephone call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

131.     Because Defendant knew or should have known that it was initiating outbound telephone calls to Plaintiff and the Class's caller identification service using a telephone number that was not capable of receiving telephone calls and/or that failed to connect callers to the Defendant's customer service telephone number during regular business hours, Defendant's violations of the FTSA were willful or knowing.

132.     Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each call that Defendant placed in willful or knowing violation of the FTSA. Fla. Stat. § 501.059(10)(b).

133.     Under Fla. Stat. § 501.059(11)(a), Plaintiff is entitled to recover reasonable attorney fees and costs from the Defendant.

25

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, or other itemizations associated with the allegations herein, including all records, lists, electronic databases, or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for the following relief:

A.    An Order certifying the Class, appointing Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

B.    An Order declaring that Defendant's actions alleged herein violate the TCPA;

C.    An Order declaring that Defendant's actions alleged herein violate the FTSA;

D.    An award to Plaintiff and each member of the Class of statutory damages of $500 for each violation of the TCPA, and an award of $1,500 for each violation found to be knowing or willful;

E.    An award to Plaintiff and each member of the Class of liquidated damages of $500 for each violation of the FTSA, and an award of $1,500 for each violation found to be knowing or willful;

F.    An award to Plaintiff and each member of the Class of pre- and post-judgment interest;

G.     An award to Plaintiff and the Class of their reasonable attorneys' fees and the costs

of this action;

H.     An injunction against Defendant's ongoing and future violations of the TCPA and

the FTSA; and

I.     Such further and other relief as the Court deems just and necessary.

Dated: February 21, 2025                    Respectfully submitted,

*/s/ Alexander Korolinsky*
Alexander Korolinsky, Esq.
Florida Bar No. 119327
**AJK LEGAL**
1580 Sawgrass Corporate Parkway, Ste 130
Sunrise, FL 33323
Tel: 888-815-3350
korolinsky@ajklegal.com

Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, P.A.**
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Classes*